IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:22-cv-1891

LYNN GARZA,

      Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

      Defendant.

_____

## PLAINTIFF'S ORIGINAL COMPLAINT
_____

### PRELIMINARY STATEMENT

1.      Plaintiff LYNN GARZA, hereinafter referred to as "Plaintiff," brings this ERISA action against the Liberty Life Assurance Company of Boston Group Welfare Benefits Plan, in its capacity as Administrator of the Sisters of Charity of Leavenworth Health System, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of her employment with Duchesne Clinic – Sisters of Charity Leavenworth, a/k/a Caritas Clinic.

### PARTIES

2.      Plaintiff is a citizen and resident of San Antonio, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Colorado.

4.      The disability plan at issue in the case at bar was funded and administered by Defendant.

5.      Defendant is a business entity doing business in the District of Colorado. Defendant may be served with process by serving its registered agent, Corporation Service Company, 1900 W. Littleton Boulevard, LIttleton, Colorado 80120.

## JURISDICTION AND VENUE

6.      This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question.   Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.      Venue in the District of Colorado is proper by virtue of Defendant doing business in the District of Colorado.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."   29 U.S.C. § 1132(e)(2).   Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a

defendant resides or may be found." (*Id.*)  Here, Defendant is "found" within the District of Colorado, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.      At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. GD/GF3-860-061065-01.

9.      Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Duchesne Clinic – Sisters of Charity Leavenworth, a/k/a Caritas Clinic, with coverage beginning on April 1, 2018.

10.     Said policy became effective April 1, 2018.

11.     At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and

pursuant to Policy No. GD/GF3-860-061065-01 issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.     Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.     Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.     Further, when a Defendant violates the Department of Labor regulations,

4

Defendant effectively forfeits its discretionary authority.

24.    When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.    Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv.     Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v.      Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi.     Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii.   Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix.     Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x.      Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi.     Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.   Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii.   Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26.   Defendant's violations of the regulations were not inadvertent or harmless.

27.   Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28.   Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

29.   Plaintiff is a 50-year-old woman previously employed by Duchesne Clinic – Sisters of Charity Leavenworth, a/k/a Caritas Clinic, as a "Nurse Practitioner."

30.   Nurse Practitioner is classified under the Dictionary of Occupational Titles as having a Light exertional level. This occupation also has an SVP of 8 and is highly skilled work.

31.   This occupation was very demanding in that it required Plaintiff to provide general and preventative care, conduct check-ups, treat illnesses, order lab tests and prescribe medication for children and adults.

32.   Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on October 9, 2018.

33.   Plaintiff alleges that she became disabled on October 10, 2018.

34.   Plaintiff filed for short term disability benefits with Defendant.

35.   Short term disability benefits were approved and paid from October 9,

2018 to April 17, 2019.

36.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

37.     The Plan defines "Disability" or "Disabled" as follows:

*"Disability or Disabled means:*

*Applicable to Class 3A, 3B, 4A, 4B, 4C, 6A, 6B:*
*b.i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

38.     The Plan defines "Own Occupation" as follows:

*"Own Occupation" with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

39.     The Plan defines "Any Occupation" as follows:

*"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."*

40.     Long Term Disability benefits were approved from April 18, 2019 to April 7, 2021.

41.     The Plan provides for monthly benefits of $5,014.88.

42.     On March 16, 2021, Defendant terminated Plaintiff's long term disability benefits.

43.     Defendant's termination letter said, "our position remains that proof of her continued disability in accordance with the Policy provisions after April 7, 2021 has not been provided." under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

44.     Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

45.     Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal. On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for consideration."

46.     On or about October 4, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

47.     Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

48.     Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

49.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably,

the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

50.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

51.     On or about February 12, 2019, Defendant's internal consultant, Robert Swotinsky, M.D. (Dr. Swotinsky), occupational medicine, performed a peer review of Plaintiff's claim file.

52.     On or about February 25, 2019, Dr. Swotinsky prepared an addendum to his peer review of Plaintiff's claim file.

53.     On or about March 27, 2019, Defendant's internal consultant, Jessica Dougherty, MS, CRC, senior vocational consultant, performed a paper review of Plaintiff's claim file.

54.     On or about February 9, 2021, Defendant's internal consultant, Jason E. Miller, Ed.M., CRC, F/ABVE, senior vocational case manager, performed a paper review of Plaintiff's claim file.

55.     On or about October 28, 2021, Defendant's paid consultant, Solomon Rojhani, M.D. (Dr. Rojhani), physical medicine and rehabilitation and pain medicine, performed a peer review of Plaintiff's claim file.

56.     On or about December 9, 2021, Dr. Rojhani prepared an addendum to his peer review of Plaintiff's claim file.

57.     On or about December 16, 2021, Defendant's internal consultant, Lori

Ashworth, M.Ed. CRC, vocational case manager, performed a paper review of Plaintiff's claim file.

58.     Defendant's peer reviews of Plaintiff's file is unreliable and unreasonable as a basis for denial because:

a.      The reviewers' opinion were infected by conflict and bias;

b.      The reviewers' conclusions lack foundation and are conclusory;

c.      The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.      The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e.      The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.      The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.      The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.      The reviewers based their opinions on a summary reports of other underqualified opinions; and

i.      The reviewers' conclusions were inconsistent with the weight of the evidence.

59.     Defendant's consultants completed their reports without examining Plaintiff.

60.     On January 19, 2021, Defendant paid its expert Brian F. McCrary, DO, MPH (Dr. McCrary), occupational medicine, aerospace medicine, undersea and hyperbaric medicine, to conduct a defense medical examination "DME" on Plaintiff.

61.     This examination was unreliable and not "independent" as evidenced by:

a.     Dr. McCrary's opinion was infected by conflict and bias;

b.     Dr. McCrary's conclusions lack foundation and are conclusory;

c.     Dr. McCrary failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.     Dr. McCrary lacked appropriate qualifications to comment on Plaintiff's conditions;

e.     Dr. McCrary failed to spend an adequate amount of time examining Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.     Dr. McCrary failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.     Dr. McCrary failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.     Dr. McCrary based his opinion on a summary reports of other underqualified opinions; and

i.     Dr. McCrary's conclusions were inconsistent with the weight of the evidence.

62.     Defendant notified Plaintiff that Defendant upheld its original decision to

terminate Plaintiff's claim for long term disability benefits.

63.     Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

64.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

65.     The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

66.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

67.     More information promotes accurate claims assessment.

68.     Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

69.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

70.     Plaintiff suffers from complex regional pain syndrome (CRPS); amniotic band fascia release of the left arm; bilateral carpal tunnel syndrome; left upper extremity pain; hypersensitivity of the left arm; has a spinal cord implant for chronic neck pain; chronic pain; numbness; tingling; limited range of motion; the inability to use her dominant arm; and struggles with brain fog and memory loss.

71.     Treating physicians document continued chronic pain, as well as

decreased range of motion and weakness.

72.     Plaintiff's treating physicians have opined that Plaintiff is unable to work.

73.     Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

74.     Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

75.     Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

76.     However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

77.     Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

78.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

79.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

80.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

81.     However, after exhausting her administrative remedies, Defendant

persists in denying Plaintiff her rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

82.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

83.     Defendant's determination was influenced by its conflict of interest.

84.     Defendant's reviewing experts are not impartial.

85.     Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

86.     Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

87.     Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

88.     Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

89.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

**COUNT I:**

**WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132**

90.     Plaintiff incorporates those allegations contained in paragraphs 1 through 89 as though set forth at length herein.

14

91.     Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.      Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b.      Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.      Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.      Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

92.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 91 above.

93.     By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

15

A.      Grant Plaintiff declaratory relief, finding that she is entitled to all past due long term disability benefits yet unpaid;

B.      Order Defendant to pay past due long term disability benefits retroactive to April 8, 2021 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.      Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.      Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.      For such other relief as may be deemed just and proper by the Court.

Dated:  Houston, Texas
            July 29, 2022

Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.


By:      __/s/ J. Anthony Vessel_____
            J. Anthony Vessel
                Tex. Bar. No. 24084019
                Fed. I.D. No. 1692384
                anthony@marcwhitehead.com

            403 Heights Boulevard
            Houston, Texas 77007

16

Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
LYNN GARZA