The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-3840

| | |
|---|---|
| Date: | December 21, 2021 |
| To: | MARC WHITEHEAD<br>MARC WHITEHEAD & ASSOCIATES<br>403 HEIGHTS BLVD<br>HOUSTON TX 77007 |
| Attn: | |
| Fax: | (346) 299-2646 |
| From: | Yasmine Toomasi<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-3840 |
| Total Pages<br>(Including Cover): | 10 |
| RE: | Claim #: 8820045<br>Claimant: Lynn Garza<br><br>Sisters of Charity of Leavenworth Health System, Inc. |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at(888) 437-7611and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-3840

December 21, 2021

Marc Whitehead
Marc Whitehead & Associates
403 HEIGHTS BLVD
HOUSTON, TX 77007

RE: Long Term Disability (LTD) Benefits
Sisters of Charity of Leavenworth Health System, Inc.
Claim #: 8820045
Claimant: Lynn Garza

Dear Marc Whitehead:

We reviewed Ms. Garza's appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond April 7, 2021.

**Initial Claim Decision**

Ms. Garza submitted a claim for her absence from work as of October 10, 2018 as a result of complex regional pain syndrome. Ms. Garza's LTD benefits began on April 8, 2019, therefore the change in definition of disability occurred on April 7, 2021 and to receive benefits beyond 24 months she must be disabled from any occupation as defined in the Policy. Benefits beyond April 7, 2021 were denied as the evaluation concluded Ms. Garza was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated May 26, 2021. Ms. Garza was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, Ms. Garza was advised to submit the following information: *All updated/missing diagnostic test results, office notes, surgery reports or treating physicians findings reports. You should also provide any additional information that you feel will support your claim.*

**Appeal**

We received Ms. Garza's notice of appeal dated October 4, 2021.

In support of her claim, you submitted the following information:

- Medical records from Algos Behavioral Health Services, The San Antonio Orthopedic

Group, Dr. Anne Clark, Monarch Plastic Surgery, Neurological Association of San Antionio, Overland Park Surgery Center, Dr. Michael Peck, TSAOG Orthopedics, The University of Kansas Health System, SERC Physical Therapy, SERC Hand Rehabilitation and The Rehabilitation Group, P.A
- Benefit Planning Query

This appeal review and analysis considered all the medical and claim documentation contained in Ms. Garza's Long Term Disability administrative record, whether or not specifically referenced in this document.

***Medical information can consist of any or all of the following: office treatment notes, consultations, operative reports, therapy notes, forms completed by your physician(s), hospital records, test results, prescription histories, and treatment plans*

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, Ms. Garza was provided with the letter dated May 26, 2021. Please refer to this letter for the details of the closure.

During the review of Ms. Garza's appeal, her claim was reviewed by an independent physician, Board Certified in Physical Medicine and Rehabilitation and Pain Medicine. The reviewer indicated the following:

*"Primary impairing diagnoses included:*

- *Carpal tunnel syndrome, left upper limb (G56.02)*
- *Pain in left hand (M79.642)*
- *Cervical spondylosis (M47.812)*
- *S/p posterior decompression at C5-6 and C6-7*
- *S/p left volar forearm fascia release with ulnar nerve exploration and decompression on 6/1/18*
- *S/p left carpal tunnel release, Guyon canal release, tenolysis x2 (FCR and PL), scar revision with intermediate closure, and exploration of median and ulnar nerves at forearm/wrist level on 4/15/19*
- *S/p C6-7 cervical laminectomy, bilateral mesial facetectomy, foraminotomy and osteophytectomy, placement of cervical epidural stimulator leads on 9/24/20.*

*Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, the claimant has impairments that translate into restrictions and limitations from 04/08/2021 to - the present.*

*The claimant is a 49-year-old female with a medical history significant for carpal tunnel syndrome, left upper limb, pain in left hand, cervical spondylosis, s/p posterior decompression at C5-6 and C6-7; s/p left volar forearm fascia release with ulnar nerve exploration and decompression on 6/1/18, s/p left carpal tunnel release, Guyon canal release, tenolysis x2 (FCR and PL), scar revision with intermediate closure, and exploration of median and ulnar nerves at forearm/wrist level on 4/15/19, s/p C6-7 cervical laminectomy, bilateral mesial facetectomy,*

*foraminotomy and osteophytectomy, placement of cervical epidural stimulator leads on 9/24/20.*

*Interval history shows that the claimant has been experiencing chronic pain in her left forearm and hand. She has a history of congenital constriction band of the left lower and upper extremity. She has undergone left volar forearm fascia release with ulnar nerve exploration and decompression on 6/1/18, and she reports worsening of her pain since that operation with pain and cramping throughout the forearm up into the antecubital fossa as well as down into the hand. On 2/16/19, she presented with left forearm and hand pain. On exam, she was slightly edematous on the left compared to the right forearm. She was quite tender throughout the entire forearm. There was a visible faint depression circumferentially around the distal third of her forearm which she notes was consistent with her amniotic band prior to operation. On 4/15/19, the claimant underwent left carpal tunnel release, Guyon canal release, tenolysis x2 (FCR and PL), scar revision with intermediate closure, and exploration of median and ulnar nerves at forearm/wrist level. Post-operatively, the claimant continued to complain of constant diffuse pain with occasional spasms. Physical exam from 8/27/19 revealed odd discoloration with hypervascularity adjacent for approximately 2 cm either side; intrinsic function is intact; swelling and motion were markedly improved, as well as digits of her hand. She has paresthesia. On 10/3/19, the claimant presented with neck pain and left arm pain. Exam shows dysesthesias particularly along the scar along the dorsum of her forearm; Spurling's induces medial scapular pain on the left; she had decreased grip strength with pain with resisted pronation and supination because of the scar pain. There was some mild duskiness along the dorsum of the hand as well. EMG/NCS from 11/11/19 revealed left superficial radial neuropathy as well as a mild/moderate left median neuropathy at the wrist, demyelinating in nature, consistent with mild/moderate left carpal tunnel syndrome. On 8/14/20, Dr. Vardiman noted that the claimant has history of "bands" affecting her left arm and left leg undergoing Z-plasty in her left lower extremity with good results as a child and having multiple left upper extremity surgeries with less success with regard to performance. Her motor examination revealed multiple motor deficits in her left upper extremity with some loss of muscular bulk, diffuse sensory irregularities. She has diminished motion in her left upper extremity, passive range of motion. On 9/24/20, the claimant underwent C6-7 cervical laminectomy, bilateral mesial facetectomy, foraminotomy and osteophytectomy, placement of cervical epidural stimulator leads. Post-operatively, the claimant noted short of a remarkable progress following her procedure with gradual, but progressive improvement. MRI of the cervical spine from 5/2/21 revealed post-surgical changes posterior decompression at C5-6 and C6-7 with no complications; multilevel spondylosis most prominent at C5-6, with interval increased focal kyphosis and Modic type 2 discogenic endplate changes at C5-6; C5-6 mild central canal stenosis with mild flattening but no compression or signal change of the spinal cord, mild left neural foraminal stenosis; C6-7 mild central canal stenosis with no compression or signal change of the spinal cord.*

*Based on the information provided, the claimant has a history of left arm and leg congenital amniotic band syndrome, which required Z-plasty in her left lower extremity with good results as a child and having multiple left upper extremity surgeries with less success with regard to performance, including left volar forearm fascia release with ulnar nerve exploration and decompression on 6/1/18, left carpal tunnel release, Guyon canal release, tenolysis x2 (FCR and PL), scar revision with intermediate closure, and exploration of median and ulnar nerves at forearm/wrist level on 4/15/19, and C6-7 cervical laminectomy, bilateral mesial facetectomy, foraminotomy and osteophytectomy, placement of cervical epidural stimulator leads on 9/24/20. The claimant was also found to have degenerative changes in her cervical spine, with a prior history of posterior decompression at C5-6 and C6-7.*

*Given the claimant's persistent pain symptoms involving her left forearm/hand and neck along with reduced range of motion, altered sensation, and decreased grip strength, the claimant is physically impaired. Therefore, the claimant requires restrictions and limitations as outlined below:*

- *Sitting: Unrestricted*
- *Standing: Unrestricted*
- *Walking: Unrestricted*
- *Lifting: Frequently up to 10 lbs. BUE; Occasionally up to 20 lbs. BUE*
- *Carrying: Frequently up to 10 lbs. BUE; Occasionally up to 20 lbs. BUE*
- *Pushing: Frequently up to 10 lbs. BUE; Occasionally up to 20 lbs. BUE*
- *Pulling: Frequently up to 10 lbs. BUE; Occasionally up to 20 lbs. BUE*
- *Climbing stairs: Unrestricted*
- *Balancing: Unrestricted*
- *Stooping: Unrestricted*
- *Kneeling: Unrestricted*
- *Crouching: Unrestricted*
- *Crawling: Never*
- *Reaching: Occasionally, all levels LUE; Occasionally, overhead and below waist levels RUE; Unrestricted, to desk level RUE*
- *Using lower extremities for foot controls: Unrestricted BLE*
- *Fine manipulation: Occasionally LUE; Unrestricted RUE*
- *Simple and firm grasping: Occasionally LUE; Unrestricted RUE*
- *No climbing ladders*
- *No operating heavy machinery*

*The above recommended restrictions and limitations are indicated from 04/08/2021 to - the present, with re-assessment on or around 4/8/2022.*

*The claimant's abilities are sustainable on a full-time basis."*

Ms. Garza's claim was reviewed by a vocational consultant, for a transferrable skills analysis based on your prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined above. The analysis showed Ms. Garza had the following skills and abilities:

*Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.*

Based on these updated capacities and Ms. Garza's skills and abilities, the previously identified occupations of Director, Nurses' Registry ($6541/month), Cardiac Monitor Technician ($4924/month) remain viable.

On November 12, 2021 we provided you with a copy of the medical and vocational review that was completed during the appeal. We provided you with 21 days to provide a response to us. The

deadline was December 2, 2021.

On December 2, 2021, we received medical records from Monarch Plastic Surgery, The University of Kansas Health Systems, SERC Hand Rehabilitation, SERC Physical Therapy, and The Rehabilitation Group, P.A.

Since additional information was received, Ms. Garza's file was sent back for an addendum by the independent physician, Board Certified in Physical Medicine and Rehabilitation and Pain Medicine. The reviewer indicated the following:

*"Yes, the additional medical records change my prior opinion regarding restrictions and limitations. Additional medical records include occupational therapy notes from 3/20/19 to 5/30/19 which revealed that the claimant has been experiencing chronic pain in her bilateral upper extremities. The impairments identified on 5/30/19 included decreased active and passive range of motion, increased pain, decreased strength, increased edema, decreased light touch sensation. The claimant had an electrodiagnostic study on 8/12/21 revealing electrodiagnostic evidence of a severe right median neuropathy at the wrist with both axonal and demyelinating features, consistent with severe right carpal tunnel syndrome; electrodiagnostic evidence of a persistent residual left median neuropathy at the wrist, demyelinating in nature, consistent with persistent left carpal tunnel syndrome; evidence of a mild right ulnar neuropathy at the elbow, demyelinating in nature, consistent with mild right cubital tunnel syndrome; evidence of a healing, mild left superficial radial neuropathy which shows signs of electrodiagnostic improvement. Based on the additional information, the claimant has continued to experience chronic pain in her bilateral arms, elbows, and hands along with evident bilateral carpal tunnel syndrome and right cubital tunnel syndrome. Therefore, I opine that the claimant requires additional restrictions. Please see amended restrictions below:*

- *Sitting: Unrestricted*
- *Standing: Unrestricted*
- *Walking: Unrestricted*
- *Lifting: Frequently up to 5 lbs. BUE; Occasionally up to 10 lbs. BUE*
- *Carrying: Frequently up to 5 lbs. BUE; Occasionally up to 10 lbs. BUE*
- *Pushing: Frequently up to 5 lbs. BUE; Occasionally up to 10 lbs. BUE*
- *Pulling: Frequently up to 5 lbs. BUE; Occasionally up to 10 lbs. BUE*
- *Climbing stairs: Unrestricted*
- *Balancing: Unrestricted*
- *Stooping: Unrestricted*
- *Kneeling: Unrestricted*
- *Crouching: Unrestricted*
- *Crawling: Never*
- *Reaching: Occasionally, overhead and below waist levels BUE; Occasionally, to desk level BUE*
- *Using lower extremities for foot controls: Unrestricted BLE*
- *Fine manipulation: Occasionally BUE*
- *Simple and firm grasping: Occasionally BUE*
- *No climbing ladders*
- *No operating heavy machinery*

*The above recommended restrictions and limitations are indicated from 04/08/2021 to - the present, with re-assessment on or around 4/8/2022.*

*The claimant's abilities are sustainable on a full-time basis."*

Based on these updated restrictions and limitations and Ms. Garza's skills and abilities, her file was sent back to the vocational consultant, and it was determined the previously identified occupations of Director, Nurses' Registry ($6541/month) and Cardiac Monitor Technician ($4924/month) remain viable.

Determinations made by Lincoln Financial Group are based on the provisions outlined in the LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. Therefore, an award of Social Security Disability Benefits is not determinative of entitlement to benefits under the specific terms and conditions of the Group Disability Income Policy.

In our review of Ms. Garza's claim, we fully considered the totality of all medical documentation received. We also obtained and considered independent medical reviews that were not considered by the Social Security Administration in its determination process.

**Conclusion**

We conducted a thorough and independent review ofMs. Garza's entire claim. In summary, we acknowledge that she may have continued to experience some symptoms associated with her condition beyond April 7, 2021. However, the information does not contain exam findings, diagnostic test results or other forms of medical documentation supporting Ms. Garza's symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being with in Ms. Garza's functional capacity and vocational skills after that date.

Regarding Ms. Garza's Mental Health conditions, she was notified on April 11, 2019, that her Mental Nervous conditions has a 24-month limitation in accordance with the above provision.Ms. Garza's benefits began on April 8, 2019; thus, the maximum duration of your Mental Nervous condition is April 7, 2021. No further benefits will be issued due to Ms. Garza's Mental Health diagnosis. This was outlined in detail in the closure letter dated May 26, 2021.

Having carefully considered all of the information submitted in support of Ms. Garza's claim, our position remains that proof of her continued disability in accordance with the Policy provisions after April 7, 2021 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, Ms. Garza must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*

1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*Applicable to Class 3A, 3B, 4A, 4B, 4C, 6A, 6B:*

*b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "**Disability**" or "**Disabled**" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

*"**Material and Substantial Duties**", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*
*Proof must be submitted in a form or format satisfactory to Liberty.*

***Discontinuation of the Long Term Disability Benefit***
*The Monthly Benefit will cease on the earliest of:*
*9. the date the Covered Person is no longer Disabled according to this policy;*

***Mental Illness and/or Substance Abuse Limitation***
*The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy. If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a period of 36 months. In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Garza was

entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information she wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of her appeal and accompanying materials, and have concluded that the denial of benefits will be maintained.

At this time, Ms. Garza's administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and her claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

***Legal Proceedings***
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

If Ms. Garza's plan is subject to ERISA, she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Ms. Garza's local U.S. Department of Labor Office or her state insurance regulatory agency. In addition, once all required reviews of her claim have been completed, she has the right to bring a civil action under applicable law. Ms. Garza's employer's plan has a contractual limitations period of 1 year, which means that a lawsuit must be brought within 1 year after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is January 21, 2023.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Sisters of Charity Leavenworth Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shika a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ąągo naaltsoos niiníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Yasmine Toomasi
Appeals Consultant
Phone No.: (888) 437-7611Ext. 16299
Secure Fax No.: (603) 334-3840